5-3691                                      396 S. W. 2d 302

Opinion delivered December 6, 1965.

*J. B. Milham,* for appellant.

No brief filed for Appellee.

ED. F. McFADDIN, Associate Justice. Appellee filed action against appellant to recover the deficiency claimed on a sales contract. On August 10, 1964 appellee Williams Ford Company (hereinafter called "Williams") sold to appellant Richard Baber a 1959 model Ford automobile. The written contract[1] recited that Baber owed a balance of $882.90, payable in instalments of $49.05 per month beginning September 12, 1964. When appellant Baber failed to make the monthly payments due, the car

---

[1] The written contract contained the following "terms and conditions":

"1. Seller shall have a security interest in the property and the proceeds thereof until all amounts due and to become due hereunder are fully paid in cash . . . .

"9. In the event the Buyer defaults in any payment . . . . Seller shall have the right at its election to declare the unpaid portion of the time balance . . . . immediately due and payable. Further, in such event, Seller . . . . may take immediate possession of the property . . . . In event of repossession of the property, and if Buyer has not redeemed the same in accordance with law, Seller may either sell same at public sale . . . . or dispose of same by private sale in such manner and upon such terms as shall appear to the Seller to be reasonable without demand for performance, with such notice to the Buyer, if any, as may be required by law . . . The proceeds of any such sale . . . . shall be applied to the partial . . . . satisfaction of the Buyer's obligations. The deficiency, if any, shall be paid by the Buyer to the Seller forthwith, upon demand . . . ."

was repossessed and sold to a wholesale secondhand car dealer for $210.00. Then, after giving credit for unearned interest, etc., Williams filed this action against Baber for $596.12 as the deficiency on the contract.

In his answer, the defendant Baber, after making a series of defensive claims not here material, specifically pleaded that Williams had failed to give Baber proper notice of the sale of the car. Here is the specific pleading in that regard:

"That defendant had no notice of the date of the sale of said automobile or to whom sold. That plaintiff did not comply with the terms of the Uniform Commercial Code; and that the acts and procedure of the plaintiff in the transactions in the sale to defendant and in the sale of the car after taking possession and all acts were not Commercially reasonable, . . ."

In the trial to the jury Williams testified that after selling the car to Baber, Williams transferred the note and contract to Ford Motor Credit Company; that when Baber defaulted in the monthly payments due in October and November the Ford Motor Credit Company repossessed the car and delivered it to Williams and demanded of Williams the repayment of the amount Williams had received from Ford Motor Credit Company. With the matter in that state of affairs, Williams wrote Baber a letter dated November 30, 1964, reading as follows:

"November 30, 1964

"Mr. Richard Baber
507 E. Sevier Street
Benton, Arkansas

"Dear Mr. Baber:

"As you know, on August 10, 1964, you purchased from us a 1959 Ford 4-Door bearing Motor # A9CG136757, and financed the balance with Ford Motor Credit Company of Little Rock, Arkansas. On November 24, 1964, Ford Motor Credit Company repossessed this automobile due to default of the October 12th and November 12th

payments in the amount of $49.05 each, and returned the automobile to us. Under the terms of the Conditional Sales Contract, Ford Motor Credit Company has requested us to pay them the net balance owed which is $796.12. Due to the foregoing, we hereby give you seven days from receipt of this letter to pay off your contract and redeem the automobile, or we will sell it at private sale. Of course, if this action is necessary and the sale price is less than what you owe Ford Motor Credit Company, we will refer the deficiency to our local attorney for collection. If you have any questions pertaining to this matter, please call or contact us.''

Mr. Williams testified that Baber did not respond in any way to the letter and that Williams had the car placed on its lot for resale. Here is the Williams' testimony:

"Q. What did you do?

"A. We cleaned the car up and put it on the lot for resale. It sat there several weeks without a legitimate buyer for it. We took it wholesale to a used car dealer here in town.

"Q. Who was that?

"A. Duvall Used Cars.

"Q. On the Bauxite highway?

"A. At the time, it was on Military and Alcoa Road, at the intersection.

"Q. Did you attempt to sell it to him privately?

"A. We tried to sell it to several people. He was the highest bidder.

"Q. What did he pay for it?

"A. $210.

"Q. Was this a wholesale transaction?

"A. Yes, and it took us a long time to get $210. . .''

The only notice that Williams ever gave Baber concerning the resale of the car is the letter of November 30, 1964, as above copied. The question raised by Baber's answer was whether this letter of November 30, 1964 was "reasonable notification of the time" (after which any private sale, etc. could be made), as required by Ark. Stat. Ann. § 85-9-504 (Add. 1961), which is a part of the Uniform Commerical Code.[2]

At the conclusion of the evidence the Court, on its own motion, directed a verdict for the plaintiff for the amount claimed; and on appeal the appellant lists five points, but the only one which gives us any concern is Point No. 2, which reads:

"The Court erred in refusing to submit issues of facts to the jury and in directing the jury to return a verdict for plaintiff."

Under Ark. Stat. Ann. § 85-9-504 (Add. 1961), in order for the secured party (Williams, in this case) to hold the debtor (Baber, in this case) liable for any deficiency, the second party must give the debtor "reasonable notice," as stated in Paragraph 3 of said section.[3] Was the letter that Williams wrote Baber on November 30, 1964 such "reasonable notice"? That is the question.

---

[2] Prior to the adoption of the Uniform Commercial Code the Arkansas holdings were that if the seller exercised the right to repossess the car, as by replevin, then he waived the debt and could not recover for any deficiency. The adoption of the Uniform Commercial Code changed these Arkansas decisions. In 16 Ark. Law Review, p. 1 *et seq.*, there is the report of an entire seminar discussion held at the University of Arkansas on the Uniform Commercial Code; and on page 151 of that volume there is the statement by Professor Mooney: "The most significant change in the law of conditional sales contracts is the final and conclusive eradication of the doctrine of election of remedies which has dogged conditional sellers and overjoyed conditional buyers almost since the founding of the State of Arkansas."

[3] The text containing the germane language reads: "Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor." For a case holding that a secondhand automobile does not have a recognized market value, nor is of a type which is the subject of widely distributed standard price quotation, see *Alliance Discount Corporation* v. *Shaw*, 171 A. 2d 548.

Baber specifically pleaded absence of notice. In instructing a verdict for the plaintiff the Court necessarily had to hold that, as a matter of law, Williams had given Baber reasonable notice.

We think, under the situation here existing, the question of whether the letter of November 30, 1964 was reasonable notice was a question for the jury to decide. The letter of November 30th shows that Williams had not then repaid the Ford Motor Credit Company, so was not in full possession of the car with right to sell. Not until Williams reacquired the paper from Ford, would Williams have had the right to sell the car. We have no brief for the appellee in this case, and our search has disclosed only one case decided by us on this matter of reasonable notice. That is the case of *Hudspeth Motors*[4] v. *Wilkinson,* 238 Ark. 410, 382 S. W. 2d 191. We had no hesitancy in saying that the notice in the Hudspeth case was sufficient as a matter of law; but in the case here, the letter that Williams wrote Baber on November 30, 1964 was so vastly different from the notice in the Hudspeth case as to make a question of fact for the jury on the matter of reasonable notice of the sale of the car. Therefore, for the error of the Court in instructing a verdict for the plaintiff the judgment is reversed and the cause is remanded.

---

[4] In studying the present case we went back to the original transcript in the cited case; and the kind of notice that Hudspeth gave Wilkinson was entirely different from the kind of notice given in the case at bar. Here is the notice that was contained in the Hudspeth case: "NOTICE IS HEREBY GIVEN: THAT HUDSPETH MOTORS, INC. will, on October 19, 1962, sell at its place of business in Harrison, Arkansas, the 2-ton Ford Truck, Motor # F69L7U38257, which was purchased by O. N. Wilkinson under an agreement executed between said O. N. Wilkinson and Hudspeth Motors, on the 13th day of February, 1962; and that in the event the amount received for said truck is less than the amount yet owing under the aforesaid agreement, Hudspeth Motors, Inc. will file suit to recover from the said O. N. Wilkinson the deficiency."