In the Matter of **PITTSBURGH–DU-QUESNE DEVELOPMENT CO.,** a limited partnership.

Appeal of **PRUDENTIAL INSURANCE COMPANY OF AMERICA,** Appellant.

No. 72–1768.

United States Court of Appeals, Third Circuit.

Argued May 17, 1973.

Decided June 29, 1973.

William T. Coleman, Jr., Carl H. Hanzelik, Dilworth, Paxson, Kalish, Levy & Coleman, Philadelphia, Pa., Stanley G. Makoroff, Morris, Safier & Makoroff, Pittsburgh, Pa., for appellant.

Stanley V. Ostrow, Elliott W. Finkel, Kaplan, Finkel, Lefkowitz, Roth & Ostrow, Pittsburgh, Pa., for trustee.

Before HASTIE, VAN DUSEN and ROSENN, Circuit Judges.

HASTIE, Circuit Judge.

This controversy arose in a proceeding under Chapter XII of the Bankruptcy Act, 11 U.S.C. § 801 et seq., instituted by Pittsburgh-Duquesne Development Co., a limited partnership for an arrangement of its real property. This appeal has been taken by Prudential Insurance Co., a mortgagee of an improved parcel of the debtor's property, from an order of the reorganization court that denied its "Petition for Restitution of Liened Rents".[1]

The debtor had two parcels of income-producing real property, both in Pennsylvania: "Cricklewood", a large residential apartment building upon which Prudential held a multi-million dollar first mortgage, and the "Geyer Building", in which Prudential had no interest. The Cricklewood mortgage provided that in the event of default, all leases and rents would stand assigned to Prudential and that Prudential would have the right to take possession, collect rents and apply them to the mortgage debt, taxes and operational expenses.

On May 29, 1969, with the Prudential mortgage in default, the debtor initiated this proceeding for a Chapter XII real property arrangement. The district court promptly entered an order that prohibited enforcement of any lien upon the debtor's real property. On August 14, 1969, the court appointed a trustee to conduct the debtor's business and manage its property. The trustee was expressly authorized "to collect and receive all rents" and "to pay . . . all debts, obligations, charges and taxes incurred in the operation of the said business and the preservation and maintenance of the said property".

The trustee collected the Cricklewood rents and out of the fund thus gener-

---

1. We find no merit in a motion by the trustee to dismiss this appeal for want of jurisdiction. Section 416 of Chapter XII, 11 U.S.C. § 816, provides generally that "the jurisdiction of appellate courts shall be the same as in a bankruptcy proceeding". Section 24(a) of the Bankruptcy Act, 11 U.S.C. § 47(a), invests the courts of appeals "with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions in proceedings in bankruptcy, either interlocutory or final . . . ." See our discussion in In re Imperial "400" National, Inc., 3d Cir. 1968, 391 F.2d 163, 167–168.

ated paid the current expenses of the Cricklewood operation other than real property taxes. Although the trustee permitted Cricklewood taxes to accrue during his administration and to remain unpaid in the amount of $124,368.05, it has been stipulated that, without receiving the court's particular approval, he diverted $83,333.48 of Cricklewood rental income to expenses incurred in the operation of the Geyer Building.

Early in 1971, Prudential petitioned the reorganization court to permit it to foreclose its Cricklewood first mortgage. This petition alleged and the trustee admitted that there was no equity in Cricklewood above Prudential's first mortgage claim of more than $4,600,000. Accordingly, the court granted the petition and on May 3, 1971 Prudential foreclosed. At the sheriff's foreclosure sale Prudential bid the exact amount of unpaid real property taxes, charges and costs, to which in law its first mortgage was subordinated. This included about $120,000 of real property taxes that had accrued during the trustee's management of the property. There was no other bid and Prudential became the purchaser. Thus, to protect its security, in which the trustee had admitted there was no equity above the mortgage, Prudential had to pay all overdue real property taxes, including those which had accrued and remained unpaid while the trustee was collecting rents and diverting the proceeds to expenses unrelated to Cricklewood.

It is the theory of the present "Petition for Restitution of Liened Rents" that the legal effect of the mortgage was to give Prudential a security interest in all rents collected after the mortgagor defaulted; that the rents collected by the trustee were impressed with that security interest; that the reorganization court's order authorizing the trustee to pay taxes out of rents empowered him to dispose of this security in a manner that would respect this interest; and that, absent any judicial direction that included some provision for substituted security, the trustee could not lawfully make any disposition of the rent that would deprive the mortgagee of the benefit of the security bargained for. Accordingly, Prudential is asking that the reorganization court require the trustee to reimburse Prudential now for the amount it has paid for taxes that the trustee should have paid out of the rents, or that the court impose an equitable lien in favor of Prudential upon the rental income of the Geyer Building.

In our view the above outlined reasoning is sound. Prudential's duly granted lien upon Cricklewood rents that issued after mortgage default persisted in equity during the Chapter XII reorganization, though at the outset the reorganization court could and did properly restrain it from enforcing that lien pending an effort to achieve an arrangement. Bindseil v. Liberty Trust Co., 3d Cir. 1917, 248 F. 112; Mortgage Loan Co. v. Livingston, 8th Cir. 1930, 45 F.2d 28. From a different approach, taxes that accrue on property while a trustee in bankruptcy or reorganization is utilizing that property in the conduct of a business are an expense of administration and a first priority debt under Section 64(a) of the Bankruptcy Act, 11 U.S.C. § 104(a). In this case the judicial authorization to pay real property taxes as they became due during the period of the trustee's economic use of Cricklewood comports with a statutory mandate to accord first priority to these obligations. *Cf.* Northumberland County v. Philadelphia & Reading C. & I. Co., 3d Cir. 1942, 131 F.2d 562. In these circumstances, payment of current Cricklewood taxes out of rental income of that property would have respected both the equitable interest of Prudential in those rents and the prescribed priority of claims in bankruptcy. To divert those rents to the Geyer Building operation was to deprive Prudential of its lawful security without serving any public interest, or for that matter any private interest to which Prudential's security could equitably be subordinated. The interest of the debtor's general creditors in whatever bene-

fit might accrue to them from successful operation of the Geyer Building did not justify depriving Prudential of its security interest in Cricklewood rents. Bindseil v. Liberty Trust Co., *supra.*

Separately, the trustee urges that some concept of laches should be applied to defeat Prudential's present claim because, during the eighteen month period that elapsed between the beginning of the trustee's management of Cricklewood and the filing of Prudential's petition for leave to foreclose, Prudential did not take affirmative action to prevent the diversion of Cricklewood rents to pay Geyer Building expenses. We have pointed out that the court had enjoined all secured creditors from acting to enforce their liens. Moreover, nothing happened during or as a result of the trustee's diversion of Cricklewood rents that would make the presently requested restitution unfair to any interested party, if the trustee's action was incorrect. Indeed, only the trustee appears to be complaining that the filing of Prudential's petition has been unduly delayed. We see no reason to treat this request for restitution differently from a similar petition that might have been filed more promptly. *Accord,* Associated Co. v. Greenhut, 3d Cir. 1933, 66 F.2d 428.

Finally, the district court deemed its decision warranted by a stipulation that had been filed by Prudential in connection with its petition for leave to foreclose its mortgage. During the course of argument on that petition the court had inquired of counsel for Prudential whether "the foreclosure will also entail a deficiency judgment". After a brief colloquy counsel replied that "we would not be entitled to a deficiency judgment". The court then asked counsel to stipulate to that effect. Accordingly, counsel stipulated in writing as follows:

"It is hereby stipulated and agreed by the Prudential Insurance Company of America, Mortgagee of the captioned Debtor, that in event of foreclosure upon its Mortgage, it will not Petition for a Deficiency Judgment, for the collection of its debt against any other property of the Debtor including the leasehold interest of the Debtor in the property known as the Geyer Property, and leased by Debtor from Urban Redevelopment Authority, adjoining the mortgaged property."

A deficiency judgment is an imposition of personal liability upon a mortgagor for an unpaid balance of a secured obligation after foreclosure of the mortgage has failed to yield the full amount of the underlying debt. Thus, a proceeding for a deficiency judgment is an attempt to recover something more than and distinct from the security provided by the debtor.

In this case the basic question is whether the rents that issued from the mortgaged property were in equity part of the agreed security. If they were, as we now hold, the secured creditor's present effort to recover them, whether directly or through the recognition and enforcement of a lien on the property in which they have been invested, is part of an appropriate effort to vindicate its own right of property. It is not an effort to enforce liability for debt beyond the agreed security, for which an approriate legal remedy would be a deficiency judgment. *Accord,* Mortgage Guarantee Co. v. Sampsell, 1942, 51 Cal. App.2d 180, 124 P.2d 353. By the same token, in legal contemplation Prudential is not attempting to satisfy its claim out of the debtor's beneficial interest in the Geyer Building, an undertaking that it stipulated to forego. Rather, it is seeking to follow and retrieve the Cricklewood rents which in equity remained its security and did not become the debtor's property when they were inapproriately diverted to pay costs of the Geyer Building.

The judgment will be reversed.