BORG-WARNER ACCEPTANCE CORPORATION, APPELLEE,
v. RALPH WATTON ET AL., APPELLANTS.
338 N.W.2d 612

Filed September 23, 1983. No. 82-561.

Jerry J. Milner of Grimminger, Milner & Lamberty, for appellants.

Thomas J. Garvey and Michael L. Munch of Hascall, Jungers & Garvey, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and GRANT, D.J.

KRIVOSHA, C.J.

The appellants, Ralph and Carole Watton and Gwyer Grimminger (Watton-Grimminger), appeal from a judgment entered by the District Court for Hall County, Nebraska, granting summary judgment in favor of Borg-Warner Acceptance Corporation (Borg-Warner) and against Watton-Grimminger. The judgment granted Borg-Warner was in the amount of $16,335.62, together with interest, and grew out of a certain guaranty executed by Watton-Grimminger in favor of Borg-Warner. We believe the trial court erred in entering such judgment, and we reverse and remand.

Borg-Warner brought the original action against Watton-Grimminger to recover a deficiency judgment for the balance due on a certain farm tractor sold by Niagara Equipment Co., Inc. (Niagara Equipment), to a Paul T. Meyer. The retail installment contract, signed by Meyer in favor of Niagara Equipment, was assigned to Borg-Warner, with recourse. In March of 1980 Meyer defaulted on the installment contract. At the time of his default Meyer was still indebted on the tractor in the amount of $36,544.92. In September of 1980 Borg-Warner took possession of the tractor and sold it at auction for $19,000.

It is undisputed that Borg-Warner did not give Watton-Grimminger notice of the sale but, nevertheless, sought to collect the deficiency from Watton-Grimminger by reason of their guaranty agreement. The guaranty agreement had been executed by Watton-Grimminger on February 7, 1978, and specifically provided that "[i]n order to induce [Borg-Warner] to enter into contracts with or extend credit or financing to Niagara Equipment Co., Inc.," Watton-Grimminger guaranteed full and prompt payment of any and every indebtedness, liability, or obligation owed by Niagara Equipment to Borg-Warner. For purposes of resolving this case it is important to further note that Niagara Equipment

signed at least two other documents in favor of Borg-Warner, one before the guaranty was signed and the other one after it was signed. On October 17, 1977, Niagara Equipment executed and delivered to Borg-Warner a document entitled "Inventory Security Agreement and Power of Attorney." By this agreement Niagara Equipment granted to Borg-Warner a security interest in all inventory of Niagara Equipment owned at the time of the execution of the agreement or thereafter acquired. The purpose of the security agreement was "to secure repayment to [Borg-Warner] of all such extensions of credit made by [Borg-Warner] in accordance with this Agreement, and to secure payment of all other debts or liabilities and performance of all obligations of [Niagara Equipment] to [Borg-Warner], whether now existing or hereafter arising."

The second document of importance is a "Retail Finance Agreement" executed April 6, 1979, by Niagara Equipment in favor of Borg-Warner. According to the document, the purpose of the agreement was to set forth the terms and conditions which would govern any purchase of contracts by Borg-Warner from Niagara Equipment. One of those conditions was that all contracts so assigned would grant to Borg-Warner a first lien upon the goods covered by the contract.

The trial court, in granting summary judgment in favor of Borg-Warner and against Watton-Grimminger, specifically found that there was no genuine issue of any material fact and that the guaranty given by Watton-Grimminger was general and unconditional. The court further found that no particular security interest was in existence or "contemplated" in connection with the giving of the guaranty. By reason thereof the trial court, apparently relying upon our decision in *First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980), concluded that the guarantors were not entitled to notice. Watton-

Grimminger, on the other hand, maintained that the case was governed by our decision in *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976), and have now appealed to this court, assigning as error the trial court's failure to so hold.

In every case before summary judgment is granted, the trial court must determine the existence of certain basic principles. As a general rule, the court should sustain a motion for summary judgment if, upon hearing, the pleadings, depositions, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Monarch Industries v. Caldwell Mfg. Co.*, 214 Neb. 26, 332 N.W.2d 664 (1983); Neb. Rev. Stat. § 25-1332 (Reissue 1979). In attempting to reach that conclusion the trial court must examine the evidence, not to decide any issue of fact, but only to discover whether any real issue of fact exists. *Green v. Village of Terrytown*, 189 Neb. 615, 204 N.W.2d 152 (1973). Contrary to the claims made by Watton-Grimminger, we believe that the trial court was correct in determining that there was no genuine issue of fact. That is not the defect in the case. The defect in this case is that the moving party here, Borg-Warner, is not entitled to judgment as a matter of law. Quite to the contrary, it would appear, on appropriate request, Watton-Grimminger are entitled to judgment as a matter of law.

The key question is whether the debt for which the deficiency is now being sought was a secured debt or an unsecured debt. It is true in *First State Bank v. Peterson, supra*, we held that "Where no security is taken or contemplated at the time an unconditional guaranty of payment is made, a failure to notify the guarantor of the sale of collateral taken at a later time as security for further indebtedness is not a defense to an action upon the guaranty agreement." (Syllabus of the court.) The evidence, however, in

the *First State Bank* case was entirely different than in the present case. In the *First State Bank* case the guarantor signed an unconditional guaranty agreement, similar to the type involved herein, guaranteeing loans of a lumber company, which were likewise wholly unsecured, at least as to the limit of the guarantor's liability. We said in *First State Bank v. Peterson*, *supra* at 816, 290 N.W.2d at 635: "In this case, no security interest in collateral existed or was contemplated at the time the guaranty agreement was made. The $12,000 loan on October 31, 1973, to the principal debtor, the lumber company, was made in reliance upon the guaranty." Not so in the instant case. As the evidence discloses, Borg-Warner did not contemplate making any unsecured loans to Niagara Equipment. The inventory security agreement executed before the guaranty was signed had already granted to Borg-Warner a lien on all of Niagara Equipment's inventory, and the retail finance agreement required that all contracts purchased by Niagara Equipment constitute a first lien upon the property. The very contract purchased by Borg-Warner in this case covered secured machinery. Moreover, the answers to request for admissions served on Borg-Warner by Watton-Grimminger established the following facts: "1. [Borg-Warner] contemplated entering into a retail finance agreement with Niagara Equipment Company at the time [Borg-Warner] induced [Watton-Grimminger] to execute a personal guarantee.

"2. [Borg-Warner] contemplated purchasing or receiving an assignment of farm machinery purhase [sic] contracts from Niagara Equipment Company at the time [Borg-Warner] induced [Watton-Grimminger] to execute a personal garantee [sic].

"3. [Borg-Warner] contemplated retaining or requiring a security interest upon the subject matter of farm machinery purchase contracts assigned to, or purchased by [Borg-Warner] from [Watton-Grimminger]."

And, finally, "5. That [Borg-Warner] retained or aquired [sic] a security interest in the said tractor which is the subject matter of this action, at the time it received the assignment or purchase of the contract from Niagara Equipment Company."

It is impossible, under the evidence, to suggest that the parties did not contemplate that the debts which Watton-Grimminger were guaranteeing were not otherwise to be secured debts, unlike the facts in *First State Bank v. Peterson*, 205 Neb. 814, 290 N.W.2d 634 (1980), and, indeed, more like the facts in *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). The guaranty itself need not be secured in order to entitle the guarantors to notice. All that need be secured to entitle the guarantor to notice is the debt for which the guaranty is executed. As we recently said in *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 46, 332 N.W.2d 674, 677 (1983): "Each guarantor is entitled to notice as a 'debtor' under the definition of such in Neb. U.C.C. § 9-105(1)(d) (Reissue 1980) as one 'who owes payment or other performance of the obligation secured . . . .' " And, further, in *First Nat. Bank & Trust Co. v. Hughes*, *supra* at 47, 332 N.W.2d at 677, we said: "It is the rule in this jurisdiction that compliance with the notice provisions of the Uniform Commercial Code is a condition precedent to the right of a creditor to recover a deficiency judgment. *First Nat. Bank & Trust Co. v. Hermann*, 205 Neb. 169, 286 N.W.2d 750 (1980); *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976); *Bank of Gering v. Glover*, 192 Neb. 575, 223 N.W.2d 56 (1974). The failure to give the requisite notice is an absolute bar to recovery." See, also, *Butte State Bank v. Williamson*, *ante* p. 296, 338 N.W.2d 598 (1983).

As we indicated at the outset, the facts in this case clearly establish that one of the parties was entitled

to judgment as a matter of law. It was not, however, as the trial court concluded, Borg-Warner.

However, Borg-Warner argues that notwithstanding the fact that the guarantors may have been entitled to notice, they waived it in writing and therefore were not entitled to it in any event. We believe that Borg-Warner is in error in that position. As we have previously indicated, a guarantor is a "debtor" under the terms of Neb. U.C.C. § 9-105(1)(d) (Reissue 1980). As such, then, whatever restrictions may be imposed by law with regard to the debtor are likewise imposed with regard to the guarantor. The Uniform Commercial Code makes it quite clear that the requirement of giving notice pursuant to Neb. U.C.C. § 9-504(3) (Reissue 1980) may not be waived prior to default. See Neb. U.C.C. § 9-501(3)(b) (Reissue 1980). Other courts which have considered this matter have likewise so concluded. See, *Norton v. Nat. Bank of Commerce of Pine Bluff*, 240 Ark. 143, 398 S.W.2d 538 (1966); *Commercial Credit Corp. v. Lane*, 466 F. Supp. 1326 (M.D. Fla. 1979); *Barnett v. Barnett Bank of Jacksonville N.A.*, 345 So. 2d 804 (Fla. App. 1977); *Commercial Discount Corp. v. Bayer*, 57 Ill. App. 3d 295, 372 N.E.2d 926 (1978); *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc. 2d 78, 401 N.Y.S.2d 404 (1977); *Ford Motor Credit Co. v. Lototsky*, 549 F. Supp. 996 (E.D. Pa. 1982). The evidence in this case establishes as a matter of law that Borg-Warner was not entitled to judgment. Therefore, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.