ALLIS-CHALMERS CORPORATION, A FOREIGN CORPORATION, APPELLEE, V. GLEN HAUMONT ET AL., APPELLEES, HERMAN S. FALES ET AL., APPELLANTS.

371 N.W.2d 97

Filed July 26, 1985.   No. 84-311.

David C. Huston of Tedd C. Huston, P.C., for appellant William E. Shaw.

Kenneth F. George of State, Yeagley & George, for appellants Fales et al.

Daniel M. Placzek of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellee Allis-Chalmers.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

The plaintiff, Allis-Chalmers Corporation, manufactures farm implements. On December 8, 1977, it entered into a "Dealer Sales and Service Agreement" with M & G Implement, Inc., of Broken Bow, Nebraska. The agreement was executed on behalf of M & G Implement, Inc., by the defendants Glen Haumont, president, Doris J. Haumont, Herman S. Fales, and William E. Shaw. As a part of the transaction, the defendants Haumonts, Fales, William E. Shaw, and Sharon Shaw executed guaranty agreements in which the defendants guaranteed the payment of all obligations of M & G Implement, Inc., to the plaintiff under the dealer agreement.

The plaintiff retained a security interest in all of its products, both new equipment and parts inventory, that were delivered to M & G Implement, Inc., pursuant to the agreement, and further had a security interest in all used equipment received by M & G Implement, Inc., as trade-ins for the plaintiff's products.

On January 19, 1982, the plaintiff discovered that there had

been sales of the plaintiff's products out of trust by M & G Implement, Inc. The dealer had sold equipment in which the plaintiff held a security interest, but the plaintiff had not received the amount due upon the sale of that equipment. The plaintiff requested immediate payment of M & G Implement's indebtedness and, shortly thereafter, demanded possession of the collateral which secured that indebtedness.

By March 25, 1982, the plaintiff had repossessed all of the new and used equipment it claimed a security interest in, except for two items. The plaintiff took back the new equipment and parts at the invoice price, including freight; the used equipment was sold at private sales.

The dealer agreement between M & G Implement, Inc., and the plaintiff was terminated on April 30, 1982.

This action was commenced against the defendant guarantors to recover $123,376.14, the balance alleged to be due the plaintiff from M & G Implement, Inc., under the dealer agreement. The defendants' answers alleged that because the plaintiff had failed to give the defendants notice as required by Neb. U.C.C. § 9-504(3) (Reissue 1980) in disposing of the collateral, the plaintiff was not entitled to a deficiency judgment.

The trial court found that the plaintiff was entitled to judgment against the defendants Herman S. Fales, William E. Shaw, and Sharon Shaw in the amount of $61,039.93, and judgment for an additional $25,015.21 against the defendant William E. Shaw. The defendants Glen Haumont and Doris J. Haumont were excluded from the trial court's determination because of a bankruptcy stay. The defendants Fales and Shaws have appealed.

The principal issue is whether the plaintiff's action for a deficiency judgment was barred by its failure to give notice as required by § 9-504(3).

Article 9 of the Nebraska Uniform Commercial Code, unless otherwise excluded, applies "to any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts . . . ." Neb. U.C.C. § 9-102(1)(a) (Reissue 1980). Since there was no

applicable exclusion, the plaintiff's disposition of the collateral taken as security for M & G Implement's indebtedness was controlled by § 9-504. Subsection (3) of that section is relevant here. It provides in part:

Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, if he has not signed after default a statement renouncing or modifying his right to notification of sale.

In *Borg-Warner v. Watton*, 215 Neb. 318, 338 N.W.2d 612 (1983), this court stated: " 'Each guarantor is entitled to notice as a "debtor" under the definition of such in Neb. U.C.C. § 9-105(1)(d) (Reissue 1980) as one "who owes payment or other performance of the obligation secured . . . ." ' " *Id.* at 323, 338 N.W.2d at 615. This court continued, stating the rule in this jurisdiction " 'that compliance with the notice provisions of the Uniform Commercial Code is a condition precedent to the right of a creditor to recover a deficiency judgment. . . . The failure to give the requisite notice is an absolute bar to recovery.' " (Citations omitted.) *Id.* See, also, *Havelock Bank v. McArthur, ante* p. 364, 370 N.W.2d 116 (1985); *City Bank & Trust Co. v. Van Andel, ante* p. 152, 368 N.W.2d 789 (1985).

This case is further controlled by this court's holding in *DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co.*, 196 Neb. 398, 243 N.W.2d 745 (1976). In *DeLay,* as in the case at bar, there was more than one disposition of collateral, only some of which the defendant was properly notified of prior to its occurrence. This court said:

We believe the intent of the Uniform Commercial Code would appear to mandate that the entire disposition of collateral by the secured party be viewed as one transaction, and that every aspect of that transaction be in accord with the requirements of the Uniform Commercial Code. To adopt any other rule would place upon the court the sometimes impossible and time-consuming task of attempting to determine the amount of recoverable

deficiency as well as the amount of unrecoverable deficiency.

What we said in Bank of Gering v. Glover, *supra*, is pertinent herein: "The creditor is given several options in disposing of collateral and very minimal formal requirements. The burden on the secured creditor is to comply with the law. The act is framed in his interest. It is not onerous to require him to give notice of the time and place of sale. In some instances it will be to the creditor's advantage to do so. On the other hand, to permit him to proceed otherwise does place an onerous burden on the debtor."

We adhere to the position we adopted in Bank of Gering v. Glover, *supra*. The right to a deficiency judgment depends on compliance with the statutory requirements. We now hold that if a creditor wishes a deficiency judgment he must comply with the law in each transaction. While this rule may seem harsh, we are persuaded by the fact that the burden is on the secured creditor to comply with the law. The act is framed in his interest. It is not onerous to require him to observe the provisions of the law.

*Id.* at 408-09, 243 N.W.2d at 751.

The defendants contend that the plaintiff is barred from recovering a deficiency judgment because it did not comply with the notice provisions of § 9-504(3) in its disposition of the repossessed equipment.

The plaintiff does not deny that it did not give notice to the defendants regarding the new equipment and parts which it took back. It contends that no notice was required as to new equipment and parts because it acted pursuant to Neb. Rev. Stat. §§ 69-1501 et seq. (Reissue 1981). M & G Implement, Inc., was fully reimbursed for all new equipment and parts on hand when the dealer agreement was terminated. As to the new equipment and parts, the plaintiff argues: "There was no deficiency that resulted and, as such, no reason for any notice to Defendants-Appellants that the new items were to be taken back as per section 69-1501." Brief for Appellee at 9.

Although the defendants received credit for the full invoice

price of the new equipment and parts, including freight, this was an "other disposition" under § 9-504, and the plaintiff was required to give the required statutory notice prior to the disposition.

As to the used equipment, letters were sent to the defendants, captioned "* * * NOTICE OF PRIVATE SALE * * *"; two such notices sent to the defendant Herman Fales were returned address unknown; the notice intended for the defendant Sharon Shaw was sent to the address of her former husband, the defendant William E. Shaw, and possibly not forwarded. On this basis the trial court found that only the defendant William E. Shaw was liable for that part of the deficiency attributable to sale of the used equipment.

*DeLay First Nat. Bank & Trust Co. v. Jacobson Appliance Co., supra,* requires that the creditor "comply with the law in each transaction." This the plaintiff failed to do. As a consequence, the plaintiff cannot recover a deficiency judgment against any of the defendants.

The judgment of the district court is reversed and the cause remanded with directions to dismiss the petition.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.

GRANT, J., participating on briefs.

BOSLAUGH, J., dissenting.

In my opinion this case goes too far. What began as a rule to insure that the debtor received full credit for the value of the collateral seized by the creditor has become a means to forfeit the rights of the creditor without regard to prejudice to the debtor or the value of the collateral as compared to the amount of the debt.

Since the debtors received credit for the full invoice price plus freight for the new merchandise and parts which the plaintiff took back, it is difficult to see how there could be any "deficiency" attributable to that part of the transaction. As for the used merchandise, the notice sent by the plaintiff advised the debtors that the items listed would be sold at private sale after the date specified. Such a notice, if properly sent, should be sufficient to comply with the statute as to the items listed.

While there are a number of jurisdictions which impose an

absolute bar to recovery by a secured creditor who fails to give notice pursuant to U.C.C. § 9-504(3) (1984), a much larger number of jurisdictions do not do so. Compare J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code 1134 n.191 with nn.192-93 (2d ed. 1980). Rather, these states allow the creditor a deficiency judgment subject to a setoff for whatever loss the debtor suffered as a result of the improper sale or, upon a showing that the creditor did not give proper notice, grant the debtor a rebuttable presumption that the collateral was worth the amount of the debt. *Id.* at 1134. These alternatives seem preferable to the rule followed in this case.

Recently, in *First Galesburg Nat'l Bank v. Joannides,* 103 Ill. 2d 294, 469 N.E.2d 180 (1984), the Illinois Supreme Court resolved a conflict within that state's appellate court regarding whether the failure of a secured creditor to give notice to the debtor of the sale of collateral bars the creditor from recovering a deficiency from the debtor. In so doing, the court adopted the "rebuttable-presumption standard," which it found to be "consistent with the conclusion reached in most jurisdictions where the question has been examined." (Citations omitted.) 103 Ill. 2d at 301, 469 N.E.2d at 183. The court reasoned:

> Nowhere in the sections of the Code concerning debtor defaults (Ill. Rev. Stat. 1981, ch. 26, par. 9-501 *et seq.*) (part 5), is it provided that a lack of notice bars a deficiency judgment. Nor is it provided that proper notice is a condition to the bringing of a deficiency action. Too, section 9-507 explicitly states consequences which are to follow a failure to comply with the provisions of part 5 of the Code. In what is relevant here it provides: "(1) If it is established that the secured party is not proceeding in accordance with the provisions of this Part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the

provisions of this Part." (Ill. Rev. Stat. 1981, ch. 26, par. 9-507.) Section 9-507 thus creates a remedy for "any loss" caused by a "failure to comply with the provisions of [part 5]," which includes, of course, the notice requirement in section 9-504(3). Any loss arising from a lack of notice will give rise to a right to recover for the loss. Section 9-507 does not provide that a failure to comply with part 5 bars the creditor from bringing an action to recover any deficiency. No basis for an "absolute-bar" principle is found anywhere in article 9.

The absolute-bar rule is also contrary to the intendment of article 9 that penal damages or results be avoided and that the aggrieved party be placed in "as good a position as if the other party had fully performed." (Ill. Rev. Stat. 1981, ch. 26, par. 1-106.) The absolute-bar rule, by barring a deficiency action regardless of whether the debtor has suffered damage from the lack of notice, provides a windfall for the debtor and arbitrarily penalizes the creditor.

103 Ill. 2d at 299-300, 469 N.E.2d at 182-83.